UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVE LEWIS,<br><br>　　　　　Plaintiff,<br>v.<br><br>NORTHUP CENTER, LLC.<br><br>　　　　　Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT AND WASHINGTON LAW AGAINST DISCRIMINATION** |

### I.　　INTRODUCTION

1.1　　Plaintiff Steve Lewis is an individual with a disability. He uses a wheelchair for mobility and drives an accessible vehicle for transportation. He requires a designated accessible parking space to ensure that he can enter and exit properties as safely as someone without a disability. One of these properties is a restaurant called Looking for Chai Taiwanese Kitchen ("Looking for Chai"), owned by Defendant Northup Center, LLC ("Northup Center"), an owner of a place of public accommodation under the Americans with Disabilities Act ("ADA").

Complaint for Declaratory and Injunctive
Relief - 1

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

1.2    The ADA obligates privately-owned places of public accommodation to provide designated accessible parking spaces that fully comply with technical guidelines in conjunction with Title III of the ADA and its implementing regulation at 28 C.F.R. § 36.304(b)(18). These guidelines include the 2010 ADA Standards for Accessible Design ("2010 Standards") and its predecessor, the 1991 ADA Standards for Accessible Design ("1991 Standards").

1.3    These requirements have existed for over thirty-five years. They apply to Northup Center, as an owner or operator of a place of public accommodation. Yet Mr. Lewis recently experienced barriers to accommodation in a parking facility owned by Northup Center.

1.4    The ADA aims to eliminate longstanding discrimination against people with disabilities.[1] This goal includes implementing technical requirements to eliminate access barriers that prevent people with disabilities from the full and equal benefits of the goods, services, or other benefits provided by places of public accommodation.[2]

1.5    Due to the lack of compliance with the ADA in a place of public accommodation, Mr. Lewis experienced discrimination based on disability, in violation of the ADA and the Washington Law Against Discrimination (WLAD). Mr. Lewis brings this action against Northup Center for violations of these laws.

## II.    JURISDICTION AND VENUE

2.1    This action arises under the laws of the United States and is brought pursuant to 28 U.S.C. § 12132. Jurisdiction is conferred upon this court under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343(a)(3)-(4).

---

[1] See 42 U.S.C. § 12101(b)(1) (purposing the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities").
[2] See 42 U.S.C. § 12101(b)(2) (intending the ADA "to [also] provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities").

2.2     The court also has supplemental jurisdiction over Mr. Lewis's state law claims pursuant to Washington's Law Against Discrimination, RCW 49.60, pursuant to 28 U.S.C. § 1367.

2.3     Venue in this court is proper pursuant to 28 U.S.C. § 1391(b)(2), as all events giving rise to the claims occurred in King County, Washington.

### III.     PARTIES

3.1     Steve Lewis is the Plaintiff in this action. At all times relevant to this action, Mr. Lewis is a resident of King County, Washington, a county located in this judicial district.

3.2     Mr. Lewis is a qualified individual with a disability as defined by Title III of the ADA and WLAD, RCW 49.60.010 *et seq.*

3.3     Mr. Lewis is "substantially limited" in his ability to walk and other "major life activities" included in the ADA.[3] He is an individual with a disability under the ADA. Thus, the ADA protects Mr. Lewis, and other similarly situated individuals, from discrimination based on disability.

3.4     Mr. Lewis uses a wheelchair for mobility and drives a modified vehicle for transportation. He requires van accessible parking with an accessible route to safely and comfortably patronize places of public accommodation.[4] This includes the property owned by Northup Center, the Defendant, in this action.

3.5     On information and belief, Northup Center owns or operates businesses open to the public, and their public parking facilities, at the address of 12121 Northup Way, Bellevue,

---

[3] 42 U.S.C. § 12102(2)(A). Major life activities also include major bodily functions. Id. § 12102(2)(B).
[4] Particularly, Mr. Lewis requires parking in designated accessible parking spaces that fully comply with the 2010 or 1991 Standards of Accessible Design.

WA 98005 (the "Property"). Publicly available records show the Property, including the entire parking facility, encompasses parcel #2825059299 in King County.

3.6 At all times relevant to this action, public records also show that Northup Center pays property taxes associated with the Property and obtained ownership of the Property through a quit claim deed in 2021.[5]

## IV. FACTS

4.1 Mr. Lewis incorporates by reference the prior paragraphs herein.

**Background – The Americans with Disabilities Act (ADA) and Applicable Laws to Ensure Full and Equal Access for Individuals with Disabilities**

4.2 The ADA imposes a general rule that no one with a disability "shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."[6]

4.3 Congress passed and enacted the ADA in 1990, after Congress found that individuals with disabilities have historically faced discrimination in society.[7] Congress statutorily declared this form of discrimination as a "serious and pervasive social problem."[8]

---

[5] This information is derived from the entry associated with the parcel number denoted in this Complaint. See Property Detail, King Cnty. Dept. Assessments, https://blue.kingcounty.com/Assessor/eRealProperty/Detail.aspx?ParcelNbr=2825059299 (last visited Sept. 29, 2025).
[6] 42 U.S.C. § 12182(a).
[7] 42 U.S.C. § 12101(a)(2).
[8] Id.

4.4     Congress also acknowledged explicitly that discrimination has "persist[ed]" in "critical areas," such as places of public accommodation.[9] "Places of public accommodation include restaurants."[10]

4.5     Further, Congress addressed "the discriminatory effects of architectural . . . barriers . . . [and] failure to make modifications to existing facilities," among other factors that contribute to the ongoing exclusion against people with disabilities.[11]

4.6     Architectural barriers that deny people with disabilities from "participat[ing] in or benefit[ing] from the goods, services, facilities, privileges, advantages, or accommodations of an entity" are discriminatory.[12]

4.7     Accordingly, Congress sought to "clear[ly] and comprehensive[ly]" eradicate discrimination against people with disabilities, such as "provid[ing] clear, strong, consistent, [and] enforceable standards" to eliminate this kind of discrimination.[13]

4.8     One of these standards is the ADA's Standards for Accessible Design. Two versions of the Standards for Accessible Design exist: the 1991 Standards for Accessible Design ("1991 Standards") and the 2010 Standards for Accessible Design ("2010 Standards").[14]

4.9     The table below provides information on what standard applies, based on the date when an owner, operator, or lessor to a place of public accommodation had begun alterations.[15]

---

[9] 42 U.S.C. § 12101(a)(3).
[10] 42 U.S.C. § 12181(7)(B).
[11] 42 U.S.C. § 12101(a)(5).
[12] 42 U.S.C. § 12182(b)(1)(A)(i).
[13] 42 U.S.C. § 12101(b)(1)–(2).
[14] U.S. Dept. Just., 2010 ADA Standards of Accessible Design (Sept. 15, 2010), https://www.ada.gov/assets/pdfs/2010-design-standards.pdf (last visited Apr. 4, 2025).
[15] U.S. Dept. Just., 2010 ADA Standards of Accessible Design 15 (Sept. 15, 2010), https://www.ada.gov/assets/pdfs/2010-design-standards.pdf (last visited Apr. 4, 2025).

| Latest Starting Date of Alterations[16] | Applicable Standard |
|---|---|
| Before January 26, 1992 | Readily Achievable (i.e., easily accomplishable without much difficulty or expense)[17] to meet the 1991 Standards |
| January 26, 1992, through March 14, 2010 | 1991 Standards |
| March 15, 2010, through March 14, 2012 | Either the 1991 or 2010 Standards |
| March 15, 2012, and later | 2010 Standards |

4.10   As an owner or operator of a place of public accommodation, Northup Center is responsible for guaranteeing full compliance with the applicable Standards at the Property. However, Northup Center has failed to uphold this obligation. The next sections document how Northup Center discriminated against Mr. Lewis by failing to remove access barriers that impacted Mr. Lewis's visit to the Property.

**Accessibility Violations at the Property**

4.11   On information and belief, the date when Northup Center last altered its public parking facility is unknown. This Complaint alleges violations related to both the 2010 and 1991 Standards.

---

[16] The applicable standard is also guided by the date when an owner or operator of a place of public accommodation last completed an application for a building permit or permit extension and received certification of completion by a local government, or that the local government receives the completed permit and does not certify the completed application. See id.

[17] ADA Technical Assistance Manual § III-4.4200, https://archive.ada.gov/taman3.htm#III-4.4200 (last visited Apr. 4, 2025).

Complaint for Declaratory and Injunctive
Relief - 6

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

4.12    Under the 2010 and 1991 Standards, an owner, operator, or lessor to a place of public accommodation shall comply with these numerical requirements to ensure enough accessible spaces are provided based on the table below.[18]

| Total Number of Spaces | Total Number of Minimum Required Designated Accessible Parking Spaces |
|---|---|
| 1-25 | 1 |
| 26-50 | 2 |
| 51-75 | 3 |
| 76-100 | 4 |
| 101-150 | 5 |
| 151-200 | 6 |
| 201-300 | 7 |
| 301-400 | 8 |
| 401-500 | 9 |
| 501-1,000 | Two percent of the total number of parking spaces available to the public. |
| 1,001+ | Twenty (20), plus one for every 100 or fraction of 1000, over 1,000. |

4.13    On information and belief, the Property contains approximately 145 spaces. Therefore, Northup Center must provide at least five accessible parking spaces to fully comply with either the 2010 or 1991 Standards.

4.14    Here, the Property contains only two designated accessible parking spaces, one located at Subway and the other located at Looking for Chai. Thus, Northup Center violates the 2010 and 1991 Standards.

---

[18] 2010 ADA Standards for Accessible Design § 208.2, U.S. Dept. Just. (Sept. 15, 2010), https://www.ada.gov/assets/pdfs/2010-design-standards.pdf; 1991 ADA Standards for Accessible Design § 4.1.2(5)(a), U.S. Dept. Just. (last updated July 1, 1994), https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.

4.15    The 2010 Standards also specify the required number of van accessible spaces, based on the total number of designated accessible spaces provided. The table below illustrates these numerical requirements.

| Total Number of Designated Accessible Spaces | Number of Minimum Required Designated Van Accessible Parking Spaces Under the 2010 Standards |
|---|---|
| 1-6 | 1 |
| 7-12 | 2 |
| 13-18 | 3 |
| 19+ | 3, plus 1 for every subsequent multiple and fraction of 6 designated accessible spaces |

4.16    Similarly, the 1991 Standards require a minimum number of van accessible spaces, albeit different from the 2010 Standards. The 1991 Standards for van accessible parking spaces are detailed on the table below.[19]

| Total Number of Designated Accessible Spaces | Number of Minimum Required Designated Van Accessible Parking Spaces Under the 2010 Standards |
|---|---|
| 1-8 | 1 |
| 9-18 | 2 |
| 19-27 | 3 |
| 28+ | 3, plus 1 for every subsequent multiple and fraction of 8 designated accessible spaces |

---

[19] See Excerpt from 28 CFR Part 36: ADA Standards for Accessible Design § 4.1.2(5)(b) (last updated July 1, 1994), https://www.ada.gov/assets/pdfs/1991-design-standards.pdf ("One in every eight accessible spaces, but not less than one, shall be served by an access aisle 96 in (2440 mm) wide minimum and shall be designated 'van accessible' as required by 4.6.4.").

Complaint for Declaratory and Injunctive Relief - 8

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172

4.17 Here, Northup Center currently has no van accessible parking spaces, when the 2010 and 1991 Standards require at least one van accessible space and four car accessible spaces. Thus, Northup Center violates the Standards.

4.18 Under the 2010 Standards, each accessible parking space shall have slopes at all points that measure no greater than one inch of height for every forty-eight inches of horizontal distance, or a grade of roughly 2.08 percent.[20] Under the 1991 Standards, each accessible parking space shall measure no greater than one inch for height for every fifty inches of horizontal distance, or a grade of roughly two percent.[21] These rules also apply to access aisles adjacent to the accessible parking spaces.[22]

4.19 Below is a photo of the general overview of the only accessible parking space at the Subway.

---

[20] 2010 ADA Standards for Accessible Design §§ 302, 502.4, https://www.ada.gov/assets/pdfs/2010-design-standards.pdf.
[21] 1991 ADA Standards for Accessible Design § 4.6.3, https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.
[22] 2010 ADA Standards for Accessible Design §§ 302, 502.4, https://www.ada.gov/assets/pdfs/2010-design-standards.pdf; 1991 ADA Standards for Accessible Design § 4.6.3, https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.



4.20    Here, the designated accessible parking space at the Subway contains running slopes (i.e., slopes measured parallelly with the edges of the parking space) in multiple areas that measure between 8.4 and 8.9%, while the adjacent access aisle to that accessible parking space contains cross slopes between 6.2% and 8.1%.

4.21    Below is a photo of the general overview of the only accessible parking space at Looking for Chai.



4.22    The accessible parking space and its adjacent access aisle at Looking for Chai contains similar issues with running slopes that far exceed the maximum slope allowed under the 2010 or 1991 Standards. Here, the designated accessible parking space at Looking for Chai contains running slopes that measure between 3.3% and 6.5%. Meanwhile, the access aisle adjacent to this parking space contains running slope that measures between 2.5% and 3.6%.

4.21    Based on these findings, the slopes of each of these accessible parking spaces and their access aisles fail to comply with either the 2010 or 1991 Standards.

4.22    Additionally, the 2010 and 1991 Standards mandate minimum widths for designated accessible parking spaces and their adjacent access aisles.

4.23    These requirements are detailed in the table below:

| Car or Van Accessible Parking Space | Width of Car or Van Accessible Parking Space | Width of the Adjacent Access Aisle |
|---|---|---|
| Car | Minimum of 96 inches | Minimum of 60 inches |
| Van | Minimum of 96 inches | Minimum of 96 inches when the van-accessible space measures at least 96 inches wide. |
| Van | 132 inches or wider | Minimum of 60 inches |

4.24    Here, the accessible parking space at the Subway is not designated as van accessible, so the requirements for car accessible spaces apply. On information and belief, the accessible parking space measures about 100 inches wide, but its adjacent access aisle measures just fifty inches wide. Thus, the access aisle of this accessible parking space fails to fully comply with the Standards.

4.25    Also, the accessible parking space at Looking for Chai fails to comply with the Standards. On information and belief, this parking space measures just eighty-six inches wide with an adjacent access aisle measuring just fifty-four inches wide. Thus, this space and accompanying access aisle violates the Standards.

4.26    Further, both the 2010 and 1991 Standards require owners or operators of places of public accommodation to provide an exterior route of at least thirty-six inches wide that directly

connects the access aisle and the shortest possible accessible route to the accessible entrance.[23]

Under both Standards, this exterior route shall generally contain no obstructions at all.[24]

4.27    Below is a photo of a close-up of the entrance to Subway.



---

[23] U.S. Dept. of Just., 2010 ADA Standards for Accessible Design §§ 403.5.1; 208.3.1. (Sept. 15, 2010), https://archive.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf; 1991 ADA Standards for Accessible Design §§ 4.3.2(4); 4.3.3, https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.

[24] See 2010 ADA Standards for Accessible Design 1991 ADA Standards for Accessible Design § 4.3.3, https://www.ada.gov/assets/pdfs/1991-design-standards.pdf ("The minimum *clear* width of an accessible route shall be 36 in (915 mm) except at doors (see 4.13.5 and 4.13.6)" (emphasis added)). See 2010 ADA Standards for Accessible Design § 502.3., https://www.ada.gov/assets/pdfs/2010-design-standards.pdf ("Access aisles shall adjoin an *accessible* route.") (emphasis in original); 1991 ADA Standards for Accessible Design § 4.1.2(5)(a), https://www.ada.gov/assets/pdfs/1991-design-standards.pdf ("Parking access aisles shall be part of an accessible route to the building or facility entrance.").

4.28 Here, on information and belief, the exterior access route at Subway measures approximately 24.5 inches wide, between the front edge of the curb stop and the closest side of the ramp to the entrance, about 9.5 inches short of the required compliant width.

4.29 In addition, the 2010 and 191 Standards mandate a maximum running slope of one inch of height for every twenty inches of horizontal distance, or a grade of about five percent.[25]

4.30 Here, on information and belief, the running slope of the exterior access route at Subway measures approximately 7.4%, about 2.4% higher than the maximum allowable slope under the 2010 and 1991 Standards.

4.31 Below is a photo that more closely depicts the only accessible parking space at Looking for Chai.

---

[25] U.S. Dept. of Just., 2010 ADA Standards for Accessible Design § 403.3 (Sept. 15, 2010), https://archive.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf; 1991 ADA Standards for Accessible Design § 4.3.7, https://www.ada.gov/assets/pdfs/1991-design-standards.pdf.



4.32    Additionally, on information and belief, the running slope of the exterior access route at Looking for Chai measures a grade of approximately thirteen percent, well above the maximum allowable slope under the 2010 and 1991 Standards.

4.33    Finally, under the 2010 Standards, the orientation of parking spaces and access aisles cannot protrude onto the required clear width of the parking space or its access aisle.[26]

---

[26] U.S. Dept. of Just., 2010 ADA Standards for Accessible Design § 502.7 (Sept. 15, 2010), https://archive.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf.

4.34    Below is an annotated version of the photo of the designated accessible parking space at Looking for Chai.



4.35    As depicted above in the circle, the curb stop on the right protrudes into the clear width of the access aisle immediately to the right of the accessible parking space, thus violating the 2010 Standards.

4.36    Counsel for Mr. Lewis sent a demand letter to Northup Center on September 10, 2025, to request a meeting by September 20, 2025 via videoconferencing or phone call to discuss the possibility over resolving this matter without litigation.

4.37    On September 18, 2025, counsel for Mr. Lewis received a signed Certified Mail return receipt, confirming that Northup Center received the demand letter.

4.38　As of the date of filing this Complaint, sixteen days after the September 20th deadline for Northup Center to respond to the demand letter and request a meeting with counsel for Mr. Lewis, has failed to respond at all.

4.39　Considering this lack of response from Northup Center, Mr. Lewis files this suit to enforce his rights under the ADA and WLAD.

## CAUSES OF ACTION

### Count I: Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a)

5.1　Mr. Lewis incorporates by reference the prior paragraphs herein.

5.2　Mr. Lewis is a qualified individual with a disability as defined under the ADA.

5.3　Mr. Lewis's disability "substantially limits" the major life activities of walking and standing.[27]

5.4　Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[28]

5.5　Here, Northup Center owns and/or operates the Property, consisting of restaurants and other businesses that qualify as places of public accommodation. Thus, Northup Center owns and/or operates a place of public accommodation subject to the obligations under ADA Title III.

5.6　By failing to fulfill obligations under ADA Title III, Northup Center has discriminated against Mr. Lewis based on his disability, directly violating the ADA.

---

[27] 42 U.S.C. § 12102(2)(A).
[28] 42 U.S.C. § 12182(a).

5.7     To date, Northup Center has failed to remediate architectural barriers that violate the ADA. This failure will foreseeably abridge Mr. Lewis's rights to "full and equal enjoyment" of the Property in the future. Without declaratory and injunctive relief, Northup Center will continue to discriminate against Mr. Lewis as alleged in this Complaint.

5.8     Mr. Lewis is entitled under the ADA to monetary damages, declaratory and injunctive relief, and reasonable costs and attorneys' fees. 42 U.S.C. § 12188; 42 U.S.C. § 12205.

### Count II: Washington Law Against Discrimination, Revised Code of Washington § 49.60.030(1)(b)

5.9     Mr. Lewis incorporates by reference the prior paragraphs herein.

5.10    Mr. Lewis has a disability as defined under the WLAD.[29]

5.11    Section 49.60.030(1) of the Revised Code of Washington provides in pertinent part: "The right to be free from discrimination because of…the presence of any sensory, mental, or physical disability…is recognized as and declared to be a civil right. This right shall include but not be limited to: … (b) The right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement."

5.12    Northup Center's Property is a "place of public resort, accommodation, assemblage, or amusement" within the meaning of WLAD.[30]

5.13    Northup Center has violated sections 49.60.010 *et seq.* of the Revised Code of Washington by unlawfully denying Mr. Lewis the full and equal access to the Property as mandated by the ADA.

---

[29] Wash. Rev. Code § 49.60.040(7).
[30] Id. § 49.60.040(2).

5.14    Incorporating his stated allegations, Mr. Lewis contends that Northup Center denies Mr. Lewis the right to "full and equal enjoyment" of public parking and other publicly available goods, services, and benefits at the Property.[31] On these grounds, Northup Center discriminates against Mr. Lewis based on disability and thus, violates WLAD. RCW 49.60.010 *et seq.*

5.16    Mr. Lewis has a clear legal right to access Northup Center's Property as a place of public accommodation. When a defendant violates a plaintiff's legal rights, and the plaintiff experiences injury as a result, courts may appropriately grant declaratory and injunctive relief for a plaintiff.[32]

5.17    Mr. Lewis's request for injunctive relief is prospective. His request also intends to protect his rights, and the rights of others similarly situated who may also want to patronize this Property.

5.18    Mr. Lewis is entitled to declaratory and injunctive relief and to recover reasonable attorneys' fees and costs incurred in bringing this action against Northup Center, pursuant to RCW § 49.60.030(2).

## V.    PRAYER FOR RELIEF

WHEREFORE, Mr. Lewis prays for the following relief:

6.1    That this Court assumes jurisdiction;

6.2    A declaration that Northup Center's actions and inactions violated Mr. Lewis's civil rights under the ADA and WLAD;

---

[31] WASH. REV. CODE § 49.60.030(1)(b) (declaring that "[t]he right be free from discrimination because of . . . disability" is a civil right, including "[t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement").

[32] See, e.g., Martini v. Boeing Co., 137 Wn.2d 357, 374 (1999); Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 213 (2013).

6.3     That this Court issue declaratory and injunctive relief ordering Northup Center to bring the Property into compliance with, and to operate the Property in compliance with, the Americans with Disabilities Act, pursuant to 42 U.S.C. § 12205, and the WLAD;

6.4     Judgment against Northup Center for compensatory damages in an amount to be proven at trial;

6.5     That this Court award reasonable attorneys' fees and costs to Mr. Lewis, pursuant to 42 U.S.C. § 12205, and RCW 49.60.030(2);

6.6     That this Court awards such additional or alternative relief as may be just, proper, and equitable; and

6.7     The right to conform the pleadings to the evidence presented.

RESPECTFULLY SUBMITTED this 6th day of October, 2025.

WASHINGTON CIVIL & DISABILITY ADVOCATE

/s/ *Conrad Reynoldson*
Conrad Reynoldson, WSBA #48187
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 876-8515
conrad@wacda.com

/s/ *Dustine Bowker*
Dustine Bowker, WSBA #63263
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3172
dustine@wacda.com

*Attorneys for Plaintiff*